UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mounir Abdel-Hak                       Case No. 12-46329-MBM
                                                                   Chapter 7
                        Debtor.                 Hon. Marci B. McIvor
_____/

**OPINION REGARDING DEBTOR'S MOTION FOR RELIEF FROM EXCESSIVE
ATTORNEY FEES**

This matter is before the Court on debtor Mounir Abdel-Hak's Motion for Relief from Excessive Attorney Fees. For the reasons stated in this Opinion, Debtor's Motion is granted.

## I. Facts

In October, 2010, Mounir Abdel-Hak and his wife Amal Abdel-Hak retained the law firm of Goldstein Bershad & Fried (hereinafter "GBF") to deal with certain creditor issues. The retention letter stated:

> This will confirm that Goldstein Bershad & Fried, PC, will be retained with respect to dealing with creditor issues related to Express Jewelry, Inc. and personally upon receipt of $3,000.00 as an advance against hourly attorney fees and costs. Our firm cannot make any guarantees as to the outcome.
>
> Each month you will receive a statement showing the time spent on the case. If the matter is completed before the retainer is exhausted, or if you wish to discontinue our services for any reason, the unearned balance of the retainer will be returned to you. If the retainer falls below $1,000.00 before the matter is completed, we may require an additional retainer.
>
> Please sign and return this letter along with the retainer amount to acknowledge your agreement with this arrangement. . .

GBF Brief, Ex. A. (hereinafter referred to as the "first retainer agreement"). The first retainer agreement was signed by both Mr. and Mrs. Abdel-Hak on October 19, 2010.

1

That same day, the Abdel Haks paid GBS $2,000. (Copy of check attached to Debtor's Motion).

Ten months later, on August 26, 2011, a written agreement captioned "RETAINER AGREEMENT - CHAPTER 7" was drawn up by GBF (hereinafter referred to as the "bankruptcy retainer agreement"). The bankruptcy retainer agreement identifies the client as "Mounir & Amal Abel-Hak" (sic) and states that "[t]his letter agreement explains the bankruptcy process and establishes the terms of your retention of our Firm as your attorneys in the Chapter 7 bankruptcy proceeding." Under the section captioned "Payment of Attorney Fees and Costs", the agreement states:

> Our Firm will be retained by payment of $3,306.00 which includes a filing fee of $306.00. This retainer is not a flat fee. It is an estimation of the cost of representing you through your First Meeting of Creditors. The retainer is an advance against fees and costs incurred in your case.
>
> We charge attorney fees in 10ths of an hour. Each month you will receive a detailed statement showing the time spent on your case and the amount charged against your retainer. If at any time you have any questions about your monthly statement, we encourage you to contact us as soon as possible to discuss those concerns. If the retainer falls below $500 before your case is concluded, we may ask you for a replacement retainer in order to continue representing you. If the matter is concluded before the retainer is exhausted, or if you would like us to discontinue representing you for any reason, the unearned balance of the retainer will be refunded to you.

The bankruptcy retainer agreement goes on to explain the Chapter 7 bankruptcy process and the services that will be provided to the Abdel-Haks under the terms of the agreement. Under a section captioned "Chapter 7 Bankruptcy Proceedings", the agreement expressly states that GBF will prepare, review and electronically file the "petition, detailed schedules, a statement of financial affairs, and various related documents." Under a section captioned "Proceedings After Filing the Bankruptcy

2

Case", the agreement notes that an attorney from GBF will be present to represent the clients at the § 341 hearing, and that prior to that hearing, a GBF attorney will contact the clients to prepare them for the hearing.

With respect to "Creditors and Discharge", the bankruptcy retainer agreement states that "[w]ith certain exceptions, you can expect to receive a discharge of your personal liability to all creditors listed on your bankruptcy schedules. . . After the bankruptcy is filed, you may pay any of these claims voluntarily, but the creditor cannot legally enforce claims against you unless you enter into a reaffirmation agreement, or unless their claim is determined to be excepted from discharge."

The bankruptcy retainer agreement expressly notes that there are certain proceedings which are not covered by the agreement:

> The Trustee and the creditors will have 30 days after the conclusion of your First Meeting to object to the claimed exemptions and 60 days after the meeting to file adversary proceedings to object to the dischargeability of a particular debt or to your general discharge. . . You should be aware that your retainer does not cover the defense of these types of actions.

GBF Brief, Ex. B.

The bankruptcy retainer agreement was never signed by the Abdel-Haks (or if it was, GBF was unable to produce a signed copy for the record). On August 31, 2011, Mr. Abdel-Hak paid GBF $3,000.

On March 14, 2012, Mr. Abdel-Hak filed a voluntary, individual Chapter 7 bankruptcy petition. In addition to the petition, GBF filed a Fed. R. Bankr. P. 2016(b) statement. The Rule 2016(b) statement describes the "compensation paid or agreed to be paid" by the Debtor as follows:

3

**[X] RETAINER**

    A. Amount of retainer received..........................$3,000.00

    B. The undersigned shall bill against the retainer at an hourly rate of $240.00.

    Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

The 2016(b) form was signed by Debtor and GBF attorney Scott Kwiatkowski on March 14, 2012.

On May 10, 2012, GBF filed a Motion to Withdraw as Attorney for Debtor. The Motion was granted on May 30, 2012. On June 6, 2012, GBF sent Debtor a letter which stated that he owed the firm $3,295.93, an amount that, if unpaid, would be sent to a collection agency. Debtor received a discharge in his bankruptcy case on July 11, 2012. On that same date, GBF's collection agency, Ronald B. Rich & Associates, sent Debtor a letter advising Debtor that it had been retained by GBF to collect the $3,295.93 allegedly owed to GBF.

On July 16, 2012, Debtor filed the present Motion for Relief from Excessive Attorney Fees. Debtor asserts that he has paid GBF a total of $5,000 ($2,000 pursuant to the first retainer agreement and $3,000 for the bankruptcy), but that the firm withdrew from his case before he received his discharge and is now seeking to collect an additional $3,295.93 from him post-discharge.[1] Debtor contends that these fees are excessive and asks the Court to disallow them. GBF contends that its fees are

---

[1] An itemized bill for professional services covering October 15, 2010 through May 9, 2012 shows total fees owed of $8,295.93. That amount, less the $5,000 paid by Debtor pre-petition leaves $3,295.93 in unpaid fees, the amount sought by GBF in the letter sent to Debtor. This amount is significantly higher than the balance showed owing on the itemized bill. The "net amount due" shown on the bill is $2,393.93. *See* Docket # 37, Exhibit C.

reasonable and that it is entitled to collect them pursuant to the express terms of bankruptcy retainer agreement.

## Analysis

### I. Pre-Petition Debts, Including Attorney Fees, are Dischargeable in a Chapter 7 Bankruptcy Case

Debtor in the present case asks the Court to find that the fees sought by GBF are unreasonable. While he frames the issue in terms of excessive fees, the Court views the problem in a different light. Regardless of the actual dollar amount of fees sought by GBF, the fee agreement was entered into pre-petition and as a general rule, pre-petition debts, including attorney fees, are dischargeable in bankruptcy. The issue before this Court is not whether Counsel's fees were reasonable; the issue is whether attorney fees owed to GBF, over and above the retainer paid pre-petition, survive discharge.

As a preliminary matter, the Court notes that attorney fees in Chapter 7 bankruptcy cases present problems and issues that do not arise under other chapters of the Bankruptcy Code. In a Chapter 13 case, attorney fees are paid with assets of the estate through confirmed plans. Chapter 13 lawyers are paid for both pre- petition and post-petition services. Chapter 7 attorneys are not so fortunate. Chapter 7 attorney fees are not obligations that are compensable from the bankruptcy estate, thus a Chapter 7 lawyer must, in a perfect world, collect his fee in full from the debtor pre-petition. Because Chapter 7 debtors often do not have sufficient funds to pay attorney fees up front, lawyers often enter into pre-petition agreements allowing debtors to pay part of the fees pre-petition and the balance of the fees post-petition. This arrangement,

5

however, runs afoul of the general rule that pre-petition debts are dischargeable.

In *Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005), the Sixth Circuit Court of Appeals held that a pre-petition agreement to pay attorney fees is not one of the exceptions to a Chapter 7 discharge under §523 of the Bankruptcy Code.

> The issue of whether pre-petition attorney fees are dischargeable in bankruptcy is *res nova* in this circuit. We join three other circuits in concluding that pre-petition attorney fees are dischargeable, and we affirm the order of the district court.
>
> 11 U.S.C. § 727(b) provides that a discharge under Chapter 7 relieves a debtor of all debts incurred prior to the filing of a petition for bankruptcy, except those nineteen categories of debts specifically enumerated in 11 U.S.C. §523(a). A debt for pre-petition legal services is not one of the non-dischargeable debts enumerated in § 523(a).

*Rittenhouse*, 404 F.3d at 396 (footnote omitted). *See also In re Gourlay,* 2012 WL 4791034 (Bankr. E.D. Mich.). In *Riittenhouse,* the party seeking payment of the fees was not the attorney who had filed the bankruptcy petition, but a third party who had purchased accounts receivable from the bankruptcy attorney. Presumably, there was a pre-petition fee agreement in writing and signed by the debtor. The Sixth Circuit affirmed the bankruptcy court's holding barring the third party from collecting "postpetition any unpaid fees for prepetition bankruptcy counseling services" because those fees were discharged by the bankruptcy judgment. *Rittenhouse* 404 F.3d at 396. The Sixth Circuit stated:

> Appellant asserts that if debts created by pre-petition agreements to pay attorney fees are not discharged, the benefits of bankruptcy will not be available to those who need it most, i.e., those who are unable to pay attorney fees in advance of filing. . . Although that argument may have merit, it raises a policy question which is properly addressed to Congress, not to the court. '[T]he judiciary's job is to enforce the law Congress enacted, not to write a different one that judges think superior.'

6

*Rittenhouse*, 404 F.3d at 397 (*quoting Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125, 1128 (7th Cir. 2003).

In the case at bar, GBF asserts that it is seeking payment for services contemplated by a pre-petition agreement, but not actually performed until after the petition was filed. *Rittenhouse* did not squarely address the issue of whether services covered by a pre-petition fee agreement but actually performed post-petition (for example attendance at the § 341 hearing or filing amended schedules) could ever give rise to a nondischargeable post-petition obligation. However, a case cited with approval by the *Rittenhouse* court, *Bethea v. Robert J. Adams. & Assoc.*, 352 F.3d 1125 (7th Cir. 2003), treats "legal services entailed in preparing and prosecuting the proceedings" as pre-petition services.

*Bethea* involved three debtors who hired lawyers under pre-petition retainer agreements that were to be paid in installments. Some of the installments were due before the petition was filed while other installments were due after the petition was filed. The lawyers performed as promised and the debtors received their discharges. When the lawyers attempted to collect on the post-petition retainer installments, the debtors commenced adversary proceedings seeking to have the attorneys held in contempt for violating the discharge injunctions. The bankruptcy court found that the 11 U.S.C. § 329, which addresses attorneys' compensation superceded the § 727 discharge provision. *Bethea*, 352 F.3d 1127. Because the fees at issue were deemed to be reasonable, the bankruptcy judge dismissed the adversary proceedings and the debtors appealed.

The Seventh Circuit Court of Appeals reversed the bankruptcy court and held

that pre-petition debts for legal fees are subject to discharge under § 727. The appellate court acknowledged the attorneys' concerns that "reading § 727 this way would force the most destitute of debtors to forego legal assistance, because counsel neither could be paid in advance (the norm for Chapter 7 cases) nor could collect after the case ends." *Id.* at 1127  However,  the court went on to explain that there was, perhaps, another way around the problem:

> For what it may be worth, however, we do not share the view that taking § 727(b) at face value necessarily injures deserving debtors. Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins-for a lawyer's aid is helpful in prosecuting the case as well as in filing it.

*Bethea*, 352 F.3d at 1128.   While two separate attorney fee agreements, one pre-petition and one post-petition, present some challenges, that approach has recently been addressed by a bankruptcy court in this district.

In *In re Slabbinck,* 2012 WL 5386677 (Bankr. E.D. Mich.), the debtor signed two separate fee agreements, one pre-petition and one post-petition.  The court looked to the Michigan Rules of Professional Conduct (MRCP) to determine whether, in a Chapter 7 case, "unbundling" legal services performed pre-petition from services performed post-petition violated an attorney's obligation to provide competent representation to a client. After reviewing the MRPC, the Official Comments to the MRPC, and two Michigan Ethics Opinions (RI-184 and RI-384), the court held that "an agreement to limit an attorney's legal services in connection with an individual Chapter 7 bankruptcy case by unbundling the pre-petition legal services from the post-petition legal services, is not *per se* prohibited by the MRPC."  *Slabbinck* at *11.

Cases from other districts have reached the conclusion that pre and post-petition

8

services may be "unbundled" if a debtor is made fully aware of the consequences of retaining counsel post-petition. These cases do not focus on an attorney's duties under the state codes of professional responsibility, rather, they focus on the adverse consequences of a post-petition agreement to a debtor. For example, in *In re Mansfield*, 394 B.R. 783 (Bankr. E.D. Pa. 2008), the debtor entered into a pre-petition flat fee agreement with his attorney. Payment of the fees was split between pre and post-petition payments. The Office of the United States Trustee brought a motion seeking disgorgement of the fees received by the attorney after the filing of the petition. The court denied the motion for disgorgement citing the lack of clarity in the law regarding attorney fees in chapter 7 cases. However, the court then addressed the issue of "unbundling" as follows:

> As previously noted, the Court concludes that a debtor's obligation under a fee agreement to pay a fixed or flat fee to his attorney for legal services rendered pre- and postpetition in a Chapter 7 case, regardless of how the fee is scheduled to be paid is a prepetition debt that is dischargeable under 11 U.S.C. § 727(b).

*Mansfield*, 394 B.R. at 785. The *Mansfield* court went on to state:

> Viewed thusly, a client's debt for postpetition services is a postpetition debt which is not subject to the automatic stay or the Chapter 7 discharge injunction (unless the work is rendered pursuant to a flat fee agreement as discussed above).The key to recovery for postpetition services, therefore, lies in the terms of the attorney's fee agreement. The fee agreement must segregate the fee(s) for prepetition work from the fee(s) for postpetition work. Once again, this distinction is necessary because a fee for prepetition work constitutes a prepetition debt of, or claim against, the estate which is dischargeable, whereas a fee for postpetition work constitutes a postpetition debt of, or claim against, the debtor which is nondischargeable.

*Mansfield*, 394 B.R. at 792-93 (footnote omitted).

While the *Mansfield* case addresses the importance of disclosing the effect of a post-petition agreement, *Mansfield*, and the cases it cites give no guidance as to how

9

one pre-petition agreement (whether a flat fee agreement or a retainer plus hourly fee) could successfully segregate pre-petition dischargeable fees from post-petition nondischargeable fees. In *In re Slabbinck*, the court required a separate post-petition agreement clearly explaining post-petition services. The *Slabbinck* court also required that the debtor be fully informed that his/her pre-petition payment to counsel covered only certain services and that those services will not be sufficient to complete the chapter 7 case. If the appropriate level of disclosure was given, and two separate agreements were signed, the *Slabbinck* court concluded that counsel could retain the fees paid post-petition pursuant to the second agreement as the obligation to pay was a post-petition debt.

## II. Do Either the Unsigned Bankruptcy Retainer Agreement or the 2016(b) Statement Create a Nondischargeable Post-Petition Obligation?

In the present case, GBF has produced a copy of a *proposed* bankruptcy retainer agreement but has been unable to produce a written fee agreement signed and dated by Debtor. Absent a signed retainer agreement with specific terms regarding GBF's fees and the scope of its representation, the Court looks to the Rule 2016(b) disclosure form to determine the parties' agreement. Based on that form, Debtor paid GBF $3,000, pre-petition, for legal representation in the bankruptcy. The retainer agreement states in relevant part:

[X]   **RETAINER**

   A. Amount of retainer received..........................$3,000.00

   B. The undersigned shall bill against the retainer at an hourly rate of $240.00.

10

Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

The Court cannot construe either the unsigned pre-petition bankruptcy retainer agreement or the 2016(b) statement as an enforceable post-petition agreement. GBF seems to view the "retainer plus an hourly charge" arrangement (as opposed to a flat fee arrangement) as effectively unbundling pre-petition services from post-petition services. The Court disagrees. The bankruptcy retainer agreement does not comply with MRPC 1.4(b), which requires that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Debtor in this case was not adequately advised that the amount paid up front as a retainer might be insufficient to cover the services required to move the case to discharge, and that fees incurred for services performed post-petition would be treated, from a dischargeability standpoint, very differently than fees paid pre-petition.[2] Debtor is entitled to know that a pre-petition retainer agreement may create a post-petition nondischargeable debt. Absent full disclosure to Debtor regarding what services will create a post-petition nondischargeable debt, Debtor's counsel cannot seek post-petition fees.

Even if GBF had fully disclosed to Debtor that the retainer agreement potentially

---

[2]GBF's itemized bill shows that GBF incurred fees in the amount of $2,207.10 between the date of the filing of the petition and the date on which GBF filed the motion to withdraw from the case. Even if GBF had disclosed to Debtor that the retainer had been spent prior to the date the petition was filed and advised Debtor that any additional services rendered would result in a post-petition obligation for attorney fees, it is impossible to reconcile amounts set forth in the itemized bill for services rendered after the date of filing with the amount set forth in the demand letters sent to Debtor on May 10, 2012 and July 16, 2012.

11

created a nondischargeable obligation, in light of the case law discussed above, GBF's retainer agreement could not create an enforceable post-petition obligation. The unbundling of pre and post-petition services is permissible only when a debtor has been fully advised regarding: (1) the specific services debtor's counsel will perform as part of the pre-petition agreement to represent the debtor; (2) the specific services debtor's counsel will perform post-petition; (3) the necessity of a separate post-petition agreement regarding payment of those services; (4) the consequences to the debtor if the debtor chooses not to retain counsel post-petition; and (5) the consequences to the debtor if debtor retains counsel post-petition i.e. that fees for post-petition services survive discharge. *See In re Slabbinck*, 2012 WL 5386677 (Bankr. E.D. Mich.); *In re Egwim*, 291 B.R. 559, 569-72 (Bankr. N.D. Ga, 2003); *In re Lawson*, 437 B.R. 609 (Bankr. E.D. Tenn. 2010).

Neither the unsigned bankruptcy retainer agreement nor the 2016(b) statement filed in the instant case create an enforceable post-petition agreement. While the retainer agreement expressly excludes certain specific services from the "bundle" of services Counsel agreed to perform as part of representing Debtor in bankruptcy, neither document complies with the requirements of MCPR and the case law. The balance of GBF's fees relate to a pre-petition agreement and are, therefore, dischargeable in bankruptcy.

### III. Equitable Relief is Not Appropriate

GBF contends that regardless of *when* a fee agreement is signed (pre-petition versus post-petition), Chapter 7 attorneys are entitled to payment of fees for services

12

actually rendered post-petition under a theory of *quantum meruit*.³ Because the fees GBF seeks to collect arise (according to GBF) solely from services performed post-petition, GBF argues that the discharge order does not bar collection of the balance owed.⁴ GBF cites *Gordon v. Hines (In re HInes)*, 147 F.3d 1185 (9ᵀᴴ Cir. 1998) in support of this proposition.

In *Hines (*a case discussed and expressly rejected by the Seventh Circuit in *Bethea* and the Eastern District of Pennsylvania in *Mansfield)*, the Ninth Circuit Court of Appeals, in an attempt to save Chapter 7 attorney fees from discharge, distinguished pre-petition legal services from post-petition legal services and awarded counsel fees as a matter of equity for post-petition services notwithstanding the fact that the contract for those services was signed pre-petition. In *Hines,* the court recognized that its decision was not consistent with the Bankruptcy Code. As explained by the Seventh Circuit, in rejecting *Hines*:

> The *Hines* majority wrote that it thought the Code as written. . . is unsatisfactory as a matter of public policy, and it decided to do a little surgery under what it called a 'doctrine of necessity.' *See [Hines]* 147 F.3d at 1190-91. Like Judge Barliant [the bankruptcy judge in the Seventh Circuit's case, *Bethea*] who concluded that *Hines* was wrongly decided, we do not conceive revision of the Code as a proper part of the judicial job.

*Bethea*, 352 F.3d at 1128.

Assuming, without deciding, that a bankruptcy attorney can enter into a valid post-petition fee for legal services rendered post-petition, such an agreement does not

---

³*Quantum Meruit* is an equitable remedy to provide restitution for unjust enrichment. *Black's Law Dictionary* 1255 (7ᵗʰ ed. 1999).

⁴*See* footnote 2 and Docket #37, ex. C. Based on the itemized bill filed by GBF, this Court cannot clearly determine the exact balance allegedly owed to GBF.

13

exist in this case. In this case, while there is a valid pre-petition agreement, to the extent that the pre-petition agreement was not paid in full prior to the filing of Debtor's bankruptcy petition, any remaining fees are discharged. This Court recognizes that GBF performed post-petition work for Debtor, and that, as a general rule, attorneys should be paid for their work. However, the theory proffered by GBF in support of payment, *quantum meruit*, lies in equity (11 U.S.C. § 105) and the Court cannot grant equitable relief when the result of doing so plainly conflicts with the express terms of the Code.

> To the extent that section 105(a). . . [applies] it cannot be applied in a manner that conflicts with a specific Code provision. Section 105(a) was not intended by Congress as a blank charter for a bankruptcy judge to grant equitable relief; rather, it was generally intended to fill in interstices found in the Bankruptcy Code. *See In re Morristown & Erie R. Co.*, 885 F.2d 98 (3d Cir.1989):

*Keeler v. PRA Receivables Mngt. (In re Keeler)*, 440 B.R. 354, 366 (Bankr. E.D. Pa. 2009.

Because the Code specifically identifies the types of pre-petition debts that survive discharge, and the unpaid portion of pre-petition fee agreements are not specified as debts which survive discharge, the Court cannot, under the guise of equity, find that the fees sought in the present case survive discharge.

## IV. Conclusion

For the reasons stated in this Opinion, Debtor's Motion for Relief from Excessive Attorney Fees is GRANTED. The Court makes no findings regarding the reasonableness of Counsel's fees, rather, the Court finds that any unpaid portion of the parties' pre-petition fee agreement did not survive discharge.

14

Signed on November 16, 2012

/s/ Marci B. McIvor  
Marci B. McIvor  
United States Bankruptcy Judge